**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Antonina Seredina,<br><br>    Plaintiff,<br><br>v.<br><br>W.L. Gore & Associates Incorporated, et al.,<br><br>    Defendants. | No. CV-24-08031-PCT-SMM<br><br>**ORDER** |

Before the Court is Defendant's Motion for Partial Summary Judgment. (Doc. 40). The Motion is fully briefed. (Docs. 42; 51). For the following reasons, the Court grants in-part, and denies in-part the Motion.

**I. BACKGROUND**

Plaintiff, Antonina Seredina, is deaf, her primary language is American Sign Language. (Doc. 34 at ¶ 6). She is not proficient with lip reading or reading English. (Id. at ¶ 7). Plaintiff worked for Defendant, W.L. Gore & Associates, Inc, from March 2006 until May 8, 2023, when she was discharged. (Doc. 41 at ¶¶ 2; 6; 9).

Plaintiff alleges that Defendant stopped paying for an interpreter, after providing one for the first few years of Plaintiff's employment. (Doc. 34 at ¶¶ 11; 12). Plaintiff states her employment became very isolating, as she was excluded from daily meetings, trainings, and other communications. (Id. at ¶¶ 14;15). While Plaintiff was sometimes provided with closed captioning for virtual meetings, she still would struggle to understand the content due to the captions moving quickly, along with her limited proficiency in reading English. (Id. at ¶ 17). Plaintiff asserts that while she would make requests for the content of the

meetings from her supervisor, and complain to her shift leader, Mr. John Pappas, her concerns went unheeded. (Id. at ¶¶ 19; 22). Plaintiff asserts the lack of transalators also prevented her from communicating with management about potential promotions and advancement opportunities. (Id. at ¶¶ 28-33).

Part of Plaintiff's employment duties included packing and lifting as part of a "boxing line." (Id. at ¶ 23). Plaintiff's immediate supervisor, Mr. Jesse Harrell, is allegedly required to make a rotation schedule, whereby employees would rotate to different tasks on the boxing line every two-hours, to prevent injuries. (Id. at ¶ 24). However, Plaintiff states that Mr. Harrell would not communicate the rotations to her. (Id. at ¶ 25). The Complaint alleges that the lack of rotation led to an injury to Plaintiff's shoulder. (Id. at ¶ 26). Plaintiff asserts she raised concerns with Mr. Harrell and Mr. Pappas but was ignored. (Id. at ¶ 27).

On May 3, 2023, Plaintiff met with Mr. Harrell to discuss her work and the issue regarding rotations. (Id. at ¶ 34). There was no translator present at the meeting. (Id. at ¶ 36). According to Defendant, during the conversation, Plaintiff made the hand gesture of a gun with her hands, and mouthed "boom, boom, boom." (Doc. 41 at ¶ 5).

On May 8, 2023, Defendant's Human Resources representatives, Ms. Michelle Kulovitz and Mr. Jonathan Long, contacted Plaintiff and scheduled a call for later that morning. (Doc. 34 at ¶ 37). On the call, Plaintiff was assisted by a video relay service application, that provides a video call with an ASL interpreter for phone calls. (Id. at ¶¶ 39-40). During the call, Plaintiff was informed that her employment was being terminated due to the communications she made to Mr. Harrell. (Id. at ¶ 46; Doc. 41 at ¶ 9). Plaintiff claims that it was at this meeting that she first became aware that Mr. Harrell interpreted Plaintiff's hand signs at their May 3, 2023, meeting as a threat of violence. (Doc. 34 at ¶ 48). However, Defendant states that Plaintiff admitted to making such communications before the May 8 meeting. (Doc. 41 at ¶ 8).

After her termination, Plaintiff states she attempted to meet with Ms. Kulovitz to discuss her termination, but her requests were denied. (Doc. 34 at ¶¶ 53-54). Further,

Plaintiff requested that Defendant provide an ASL interpreter to explain Defendant's exit package, but that request too was denied. (Id. at ¶¶ 55-57). Plaintiff resolved to write a letter, to Defendant's CEO Mr. Bret Synder, to explain the lack of communication, and request a meeting with the Human Resources department to resolve the miscommunication. (Id. at ¶¶ 58; 59). Plaintiff did not receive a response to this letter. (Id. at ¶ 60).

At this point, Plaintiff contacted the Equal Employment Opportunities Commission ("EEOC") and had an interview with an EEOC investigator. (Doc. 41 at ¶ 10). On November 23, 2023, Plaintiff filed the original charge of discrimination with the EEOC. (Id. ¶17). On December 11, 2023, the EEOC issued Plaintiff a Notice of the Right to Sue Letter. (Id. at ¶ 22).

After Plaintiff retained counsel to reopen her EEOC case, an amended charge was filed with the EEOC addressing all the allegations Plaintiff states to have raised in her intake interview. (Id. at ¶¶ 65-75). The amended charge was filed on March 19, 2024. (Id. at ¶ 31).

Between the original charge, and the request for an amended charge, Plaintiff filed a Complaint with this Court on February 14, 2024. (Doc. 1). The Complaint was amended four times, with the Fourth Amended Complaint being filed on November 26, 2024. (Doc. 34). The Fourth Amended Complaint has five counts, each being brought under the Americans with Disabilities Act ("ADA") and the Arizona Civil Rights Act ("ACRA"): discrimination, wrongful termination, failure to accommodate, retaliation, and hostile work environment. (Id.)

On January 22, 2025, Defendant filed the Partial Summary Judgment Motion at bar. (Doc. 40). Defendant argues that Plaintiff failed to exhaust the administrative remedies of for all her claims other than those based on her alleged wrongful termination. (Id. at 1). In addition, Defendant argues that the claims brought under the ADA are untimely in so far as they rely on acts that occurred more than three hundred days before the filing of Plaintiff's original charge with the EEOC, and the claims brought under the ACRA are untimely as they were brought more than one hundred and eighty days after her

termination. The Court now reviews.

## II. LEGAL STANDARD

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

Before a plaintiff can file suit under Title VII, she "must exhaust [her] administrative remedies by filing a timely charge with the EEOC ... thereby affording the agency an opportunity to investigate the charge." B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1099 (9th Cir. 2002). This exhaustion requirement is meant to "giv[e] the charged party notice of the claim and narrow[ ] the issues for prompt adjudication and decision." Id. (quotation marks and citations omitted). Therefore, the charge filed with the EEOC usually must set forth all types of discrimination an individual believes she has suffered. Id. When a particular type of discrimination is not contained in the charge, the plaintiff likely cannot pursue that type of discrimination in litigation.

As an initial matter, Plaintiff's Amended Charge cannot be considered for the purposes of this lawsuit, as Plaintiff had filed suit after the original Right to Sue Letter was issued. The EEOC informed Plaintiff of this fact. On April 17, 2024, the EEOC sent Plaintiff a letter stating it had "decided to cease the processing of [Plaintiff's] charge of discrimination because [she] ha[d] filed a lawsuit. . . in Federal District Court." (Doc. 41

at ¶ 35); see also, 29 C.F.R. § 1601.19(b).

Plaintiff's original EEOC Charge alleges that on May 8, 2023, Plaintiff was discharged, she believes that she was wrongfully discharged because of her disability, and she was not given an opportunity for an in-person discussion regarding the termination. (Doc. 41 at Exhibit 5). On its face, this would suggest that Plaintiff did not exhaust her administrative remedies for her causes of action based on requests for reasonable accommodation, hostile work environment, or retaliation. This is the case as the EEOC Charge solely references Plaintiff's alleged wrongful discrimination, while omitting reference to any other count of her Complaint.

However, Courts are directed to look past the plain language in the charge to determine whether a cause of action has been properly exhausted. In determining if an EEOC charge sufficiently alleged a particular type of discrimination to satisfy the exhaustion requirement, the language of the charge must be construed "with utmost liberality since [charges] are made by those unschooled in the technicalities of formal pleading." B.K.B., 276 F.3d at 1100 (quotation marks and citation omitted). Types of discrimination not set forth in a charge may be deemed exhausted if they "are like or reasonably related to the allegations contained in the EEOC charge." Lyons v. England, 307 F.3d 1092, 1104 (9th Cir. 2002) (quotation marks and citation omitted). A claim should be deemed exhausted if it "fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. (quotation marks and citation omitted).

"The rule of liberal construction does not suggest that a plaintiff sufficiently exhausts his administrative remedies under Title VII by merely mentioning the word 'discrimination' in his or her EEOC administrative charge." Freeman v. Oakland Unified School Dist., 291 F.3d 632, 637. "The inquiry into whether a claim has been sufficiently exhausted must focus on the factual allegations made in the charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Id. at 636.

Plaintiff's original charge was limited to referencing alleged disability

discrimination resulting in her termination. The charge stated, simply:

> I was hired by [Defendant] in March 2006, my last position held was operator. On May 8, 2023, I was discharged by HR representative Michelle Kulovitz and Johnathan (LNU) via phone call. Due to my disability, I believe I was wrongfully discharged, and I was not afforded an opportunity for an in-person discussion. I believe I was discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

(Doc. 41-2).

The original charge does not mention requests for reasonable accommodation or the denial thereof, it does not reference a hostile work environment, nor does it mention retaliation or any protected activity that could support such a claim. The original charge solely references Plaintiff's termination—even with a stretched construction, the Court cannot read any claims past the termination in looking at the plain text of the Charge.

However, Plaintiffs in disability actions are provided with even greater leeway by courts when determining whether a claim has been exhausted: the Ninth Circuit has held that when the negligence of an agency representative who completes the charge form causes the charge to be deficient in recording of a plaintiff's theory of the case, then the plaintiff may present additional information provided to the agency representative, in a pre-charge questionnaire, as evidence that the plaintiff's claim for relief was properly exhausted. B.K.B., 276 F.3d at 1101; see, e.g., Anthony v. County of Sacramento, 898 F.Supp. 1435, 1443 n. 5 (E.D. Cal. 1995) (holding that a pre-complaint questionnaire can be reviewed to determine the scope of an EEOC charge where the agency, in preparing the complaint, falsely abbreviated the plaintiff's theory of the case by "substantially condens[ing] and edit[ing] the plaintiff's complaint"); Sickinger v. Mega Systems, Inc., 951 F.Supp. 153, 157–58 (N.D. Ind. 1996) (holding that plaintiff could rely upon allegations made in her pre-complaint questionnaire for purposes of exhaustion where EEOC representative who typed the charge failed to include allegations of wrongful retaliation that were clearly presented on the questionnaire); Cheek v. W. & S. Life Ins., Co., 31 F.3d 497, 502 (7th Cir. 1994) (determining that "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency

to investigate the allegations."). "A Title VII complainant is not charged with the commission's failure to perform its statutory duties." Watson v. Gulf & Western Indus., 650 F.2d 990, 992 (9th Cir.1981) (quoting Russell v. Am. Tobacco Co., 528 F.2d 357, 365 (4th Cir.1975), cert. denied, 425 U.S. 935 (1976)).

Plaintiff argues that to the extent the Charge is deficient, Plaintiff provided more information to the EEOC that the EEOC did not include in the Charge. It is true that the intake notes include more information than was stated in the Charge. See (Doc. 41-2) ("For the last two years [Plaintiff] requested an interpreter . . .overlooked her request . . . complain[ed] to their supervisor . . . [supervisor] would ensure there was an interpreter . . . [w]hen supervisor was not there, [leads] would [sometimes] not arrange it . . . [i]n April 2023 . . . [Plaintiff] became frustrated because everyone was supposed to rotate but some employees stayed at their preferred stop . . .[Plaintiff] complained to Lead . . . [Plaintiff] hurt her shoulder because [of the lack of rotation] . . .").

It is not clear whether such a rule extends past a pre-charge questionnaire to intake notes. See Rodriguez v. Airborne Express, 265 F.3d 890, 897 (9th Cir. 2001) (holding oral statements to state anti-discrimination agency cannot "cure the legal defects in [a] charge," and explaining that "[t]his circuit has previously refused to consider oral statements conveyed to a [California Civil Rights Department] investigator to determine the scope of a reasonable investigation.").

In the interest of interpreting the charge with the upmost latitude, the Court will consider the additional statements provided to the EEOC officer, as found in the intake notes. The Court finds it plausible that the EEOC officer's negligence failed to properly frame the original charge given the sparseness of the charge as compared to the intake notes, and therefore will consider the full narrative provided by Plaintiff to the EEOC. See Alozie v. Arizona Bd. of Regents, No. CV-16-03944-PHX-ROS, 2017 WL 11537899 (D. Ariz. 2017) (considering the narrative provided to the EEOC.). However, the Court finds that this only exhausts Plaintiff's claims for denial of reasonable accommodations and retaliation, but not Plaintiff's claim for a hostile workplace.

"[T]he ADA says that 'discrimination' includes an employer's 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified ... employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business.'" U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 396 (2002) (quoting 42 U.S.C. § 12112(b)(5)(A) (alterations and emphases in original)). Taking into consideration the intake notes, the Court finds that Plaintiff has properly alleged that: Plaintiff requested reasonable accommodations, which were sometimes given, and sometimes not given, depending on which manager was present during her shift. (See Doc. 41-2). This claim fits into the broader tapestry of what actually appears on the charge, such that it would have made sense to include the statements in the official EEOC charge. The EEOC charge details the final altercation resulting from Plaintiff's alleged lack of accommodations. Therefore, the Court finds the denial of reasonable accommodations claim to be properly exhausted and finds it would be improper to dismiss the claim on a theory of Plaintiff's failure to exhaust her administrative remedies.

Meanwhile, to establish a prima facie retaliation claim under the ADA, the employee must show that "(1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 849 (9th Cir. 2004). The employee's protected activity can include opposing any act or practice by the employer that violates the ADA and pursuing rights guaranteed by the statute, such as requesting a reasonable accommodation. Id. at 850; see also, Denning v. Washoe Cty., No. 3:17-cv-00463-MMD-WGC, 2018 WL 4286185, at *4 (D. Nev. 2018), aff'd sub nom. Denning v. Cty. of Washoe, 799 F. App'x 547 (9th Cir. 2020). An adverse employment action is "any action reasonably likely to deter employees from engaging in protected activity." Pardi, 389 F.3d at 850 (quoting Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000)).

As detailed above, the Court, in considering the intake notes, finds that Plaintiff has properly exhausted a claim based on denial of reasonable accommodations. Coupled with Plaintiff's termination, as described in the original charge, and the casual link alleged

between the two events, by which Plaintiff's complaining about the alleged denial led to the conversation which then resulted in her termination, the Court finds that Plaintiff has properly exhausted a claim of retaliation.

However, even liberally construing the intake notes cannot allow a finding that Plaintiff has exhausted her claim as to a hostile work environment. To establish a hostile work environment claim, Plaintiff must show that "(1) she is a qualified individual with disability; (2) she suffered from unwelcome harassment; (3) the harassment was based on her disability or a request for accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) Defendant[ ] knew or should have known of the harassment and failed to take prompt remedial action." Vitchayanonda v. Shulkin, No. ED CV 17-0349 FMO (SPX), 2019 WL 4282905, at *10 (C.D. Cal. 2019) (citations omitted). "When determining whether an environment was sufficiently hostile or abusive, courts examine all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with an employee's work performance." Crowley v. Wal-Mart Stores, No. CV 16-00293 SOM/RLP, 2018 WL 4345251, at *8 (D. Haw. 2018) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)); see Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (an abusive working environment exists when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' ... that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment'") (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65-67 (1986)); Orio v. Dal Glob. Servs., LLC, No. 14-00023, 2016 WL 5400197, at *16 (D. Guam 2016) ("Like a hostile work environment claim based on sex, race, or nationality, a sufficiently severe or pervasive hostile work environment based on disability presents a high bar.")

The intake notes present a narrative that Plaintiff repeatedly requested accommodations, which were often denied. Such denials are not sufficiently harassing or abusive to support a hostile work environment claim under the ADA. Plaintiff cannot

prevail when "the behavior on which [she] primarily relies consists of employment decisions with which she disagreed, not physical or verbal conduct of a harassing nature." Keller-McIntyre v. S.F. State Univ., No. C-06-3209 MMC, 2007 WL 776126, at *13 (N.D. Cal. 2007); see Mallard v. Battelle Energy All., LLC, No. 4:12-CV-00587-BLW, 2013 WL 2458620, at *9 (D. Idaho 2013) (finding that the conduct the plaintiff endured over a five month period – forced unpaid leave, physical and psychiatric exams, the threat of termination, a requested return-to-work form, and a performance improvement plan – "falls far short of the severe, pervasive harassment needed to support a hostile work environment claim"); Linder v. Potter, No. CV-05-0062-FVS, 2009 WL 2595552, at *12 (E.D. Wash. 2009) (plaintiff failed to show that his employer subjected him to a hostile work environment by "denying his request for continued sick leave, declaring him AWOL after he properly requested additional sick leave, summoning him to an investigative interview[,] and denying his request for a reasonable accommodation"); Wynes v. Kaiser Permanente Hosps., 936 F. Supp. 2d 1171, 1186 (E.D. Cal. 2013) (plaintiff's "dissatisfaction with how [defendant] accommodated her disability ... does not give rise to a claim for hostile work environment harassment").

     Therefore, the Court finds that while the Plaintiff has exhausted her administrative remedies as to her denial of reasonable accommodations claim and her retaliation claim, Plaintiff has failed to exhaust her administrative remedies as to her hostile work environment claim. Even considering the intake notes, and contrusing them liberally, the Court does not find facts were alleged that would reasonable lead to an investigation of such claim. Therefore, the Court will grant Defendant's Partial Summary Judgment Motion on the hostile work environment claim and dismiss the count, while denying Defendant's Motion as to all other counts.

///
///
///
///

**B. Timeliness Issues**

**1. ADA Claims**

An employee must file a charge of discrimination within three hundred days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). The continuing violations doctrine extends the accrual of a claim if a continuing system of discrimination violates an individual's rights "up to a point in time that falls within the applicable limitations period." Williams v. Owens–Illinois, Inc., 665 F.2d 918, 924 (9th Cir.1982).

As the Charge of Discrimination was filed on November 18, 2023, Plaintiff's window to allege unlawful employment practice extends back to January 22, 2023, three hundred days prior. Defendant moves the Court to dismiss Plaintiff's claims of disability discrimination, retaliation, and failure to accommodate, as the claims are untimely. (Doc. 40 at 14).

Looking at the Fourth Amended Complaint, the Court finds Plaintiff has alleged facts within the statute of limitations period and therefore will decline to dismiss Plaintiff's claims. The anchor to Plaintiff's claims of disability discrimination, retaliation, and failure to accommodate are the denial of Plaintiff's requests for interpreters or other means to understand the daily goings of operations at her place of employment.[1] While the Fourth Amended Complaint does not specify specific dates that these requests were made, it does state Plaintiff "was excluded from daily meetings, trainings, and important workplace communications because Gore refused to consistently provide ASL translation or other effective communication," that she "repeatedly asked her supervisors for a reasonable accommodation so she could participate," and that those requests were denied. (Doc. 34 at

---

[1] The termination, of course, occurred during the statute of limitations period, and Plaintiff's theory of the case is that the termination was retaliation against Plaintiff after she complained of an unlawful practice. This unlawful practice, as discussed in Section III.A., is alleged to be the denial of reasonable accommodations, thus anchoring Plaintiff's retaliation claim in the same facts as her denial of reasonable accommodations and discrimination claims. However, it is undisputed that the conversation Plaintiff had with Mr. Harrell, where she claims she complained about the lack of accommodations, occurred on May 3, 2023, well within the relevant time period.

1  2). Reading the Complaint in a light most favorable to Plaintiff, and considering the use of the word "daily," the Court finds it is reasonable to presume that Plaintiff's requests, and Defendant's subsequent denials, occurred during the statute of limitations period. The Court does not find it proper to dismiss the claims before discovery can take place, that could firmly establish the timeline of Plaintiff's requests. This is further demonstrated by the fact that Defendant does not advance any evidence asserting to show that no such conversations were had in the relevant period.

However, the Court agrees with Defendant that any claims based on a denial of promotions must be dismissed as untimely. The factual allegations in the Complaint regarding the alleged "exclusion from promotion and advancement" contain no words that tie this alleged misconduct to a date during the statute of limitations period. See (Doc. 34 at 4). Further, Defendant advanced unrebutted evidence that "Plaintiff only submitted three applications for other positions since she started at Gore: one in 2013, for which she withdrew her application, and two in 2016." (Doc. 40 at 14).

**2. ACRA Claims**

Unlike claims brought under the ADA, a charge alleging claims brought under the ACRA must be filed by one hundred and eighty days after the allegedly unlawful employment practice. A.R.S. § 41-1481(A). As Plaintiff filed her charge with the EOC one hundred and ninety-four days after her termination, she was not employed at any point during this time period. Therefore, the Court grants Defendant's Partial Summary Judgment Motion to dismiss all claims brought under the ACRA, for being untimely.

///
///
///
///
///
///
///

## IV. CONCLUSION

For the preceding reasons, the Court will grant in-part, and deny in-part, Defendant's Motion for Partial Summary Judgment. The Court dismissed Plaintiff's claims brought under a theory of hostile work environment, dismisses all Plaintiff's claims in so far as they rely on a theory of denial of promotion, and all claims brought under the ACRA. For the time being, all other of Plaintiff's claims will remain in this matter.

For good cause shown,

**IT IS ORDERED granting in-part, and denying in-part**, Defendant's Motion for Partial Summary Judgment.

**IT IS FURTHER ORDERED dismissing** Count V of Plaintiff's Complaint.

**IT IS FURTHER ORDERED dismissing** all claims in Plaintiff's Complaint brought under the ACRA.

**IT IS FURTHER ORDERED dismissing** any claims so far as they rely on a theory of failure to promote.

Dated this 7th day of August, 2025.

_____
Stephen M. McNamee
Senior United States District Judge